**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MICHAEL A. DEMUTH,**

                                        **Plaintiff,**

          **vs.**                                                    **9:18-CV-915**
                                                                      **(MAD/CFH)**

**SERGEANT WHITE, CORPORAL GREGWIRE,**
                                        **Defendants.**

---

**APPEARANCES:**                              **OF COUNSEL:**

**MICHAEL A. DEMUTH**
19-B-1439
Collins Correctional Facility
Post Office Box 340
Collins, New York 14034
Plaintiff *pro se*

**OFFICE OF FRANK W. MILLER**          **FRANK W. MILLER, ESQ.**
6575 Kirkville Road
East Syracuse, New York 13057
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Michael A. Demuth commenced this action *pro se* on August 3, 2018, alleging

claims of First Amendment retaliation and First Amendment court access under 42 U.S.C. § 1983

against individual Defendants, the Chenango County Sheriff's Office, and the Town of Norwich.

*See generally* Dkt. No. 1. On October 5, 2018, the Court dismissed all claims with the exception

of the First Amendment retaliation claim against Defendants Sergeant White and Corporal

Gregwire. *See* Dkt. No. 10 at 10–11. Currently before the Court is Defendants' motion for

summary judgment.  *See* Dkt. No. 31.  Plaintiff has failed to submit any opposition papers.[1]  For

the following reasons, Defendants' motion is granted.

## II. BACKGROUND

**A.    Local Rule 7.1(a)(3)**

Local Rule 7.1(a)(3) requires a party opposing a motion for summary judgment to file a

response "admitting and/or denying each of the movant's assertions" in the movant's Statement of

Material Facts, and "[e]ach denial shall set forth a specific citation to the record where the factual

issue arises."  N.D.N.Y.L.R. 7.1(a)(3).  Where the opposing party fails to follow Local Rule

7.1(a)(3), the Court shall accept the properly supported facts stated in the movant's Statement of

Material Facts.  *See id.* ("The Court shall deem admitted any properly supported facts set forth in

the Statement of Material Facts that the opposing party does not specifically controvert")

(emphasis in original).  While this Court must construe a *pro se* litigant's pleadings and papers

liberally, and interpret them to raise the strongest arguments that they suggest, this standard "does

not excuse a *pro se* litigant from following the procedural formalities of summary judgment,"

including Local Rule 7.1(a)(3).  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003)

(citation omitted).  "The courts of the Northern District have adhered to a strict application of

Local Rule 7.1(a)(3)'s requirement on summary judgment motions."  *Id.* (citations omitted).

In the present matter, Plaintiff failed to submit any response to Defendants' Statement of

Material Facts.  Accordingly, the properly supported facts set forth in Defendants' "Statement of

Material Facts as to Which There is No Genuine Dispute" are deemed admitted for purposes of

this motion.  *See* N.D.N.Y.L.R. 7.1(a)(3).

---

[1] Magistrate Judge Christian F. Hummel granted Plaintiff two extensions to file a response.
*See* Dkt. Nos. 36, 38.

**B.     Background**

The conduct giving rise to this case occurred at the Chenango County Correctional Facility.  On July 30, 2018, Defendants White and Gregwire were working at the Chenango County Correctional Facility and were approached by Plaintiff, who was an inmate at the facility. *See* Dkt. No. 31-2 at ¶ 2.  Plaintiff requested their signatures on legal documents, specifically, paperwork for an application to proceed *in forma pauperis*.  *See id*.  The legal documents required the signature of an "authorized officer" who could verify the contents of Plaintiff's commissary account.  *See id.*  Defendants were not presented with a court order or any other documents requiring the services of a notary.  *See* Dkt. No. 31-2 at ¶ 2.  Defendant White explained both Defendants' inability to sign the documents, as they did not qualify as "authorized officers" for this purpose.  *See* Dkt. No. 31-2 at ¶¶ 3–4.  Plaintiff allegedly then "became belligerent and argumentative" because neither Defendant had the authority to comply with his request as they did not have access to his commissary account or the balance thereof.  *See* Dkt. No. 31-2 at ¶ 4; Dkt. No. 31-25 at ¶ 8.

Plaintiff alleges that Defendants White and Gregwire retaliated against Plaintiff's filing of lawsuits concerning the conditions of his confinement at Chenango County Correctional Facility by refusing to sign these legal documents, by becoming hostile towards him, and threatening to "lock [him] in [his] cell." Dkt. No. 1 at 2.  Plaintiff further alleges that Defendant White had previously locked him in his cell "for [a] long period[] of time" after Plaintiff threatened to "file one more civil [lawsuit]." *Id.*  Defendants deny these allegations, stating that neither Defendant is a Commissary Officer, the appropriate "authorized officer" required for the type of legal document Plaintiff wanted signed.  *See* Dkt. No. 31-2 at ¶ 3.  Defendants further explain that Plaintiff has

been locked in his cell due to various counts of misbehavior and violations of rules in the facility. *See* Dkt. No. 31-2 at ¶¶ 12–20.

Plaintiff filed an informal grievance regarding the underlying events on July 29, 2018. *See* Dkt. No. 31-21. He then filed a formal grievance on the same date. *See* Dkt. No. 31-22 at 1. On August 9, 2018, a Grievance Coordinator issued a determination on Plaintiff's formal grievance. *See id.* at 2. Plaintiff's complaint in this matter is dated July 31, 2018, and was received by the Court on August 3, 2018. *See* Dkt. No. 1. Plaintiff did obtain the information he needed for the application to proceed *in forma pauperis* at a later date, and the civil action for which he needed it was not delayed. *See* Dkt. No. 31-2 at ¶¶ 23–24.

Presently pending before the Court is the remaining Defendants' motion for summary judgment. *See* Dkt. No. 31. In their motion, Defendants seek summary judgment on (1) the ground that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); (2) the merits of Plaintiff's First Amendment claim; and (3) the ground that Defendants are entitled to qualified immunity. *See id.* Plaintiff has not responded to the pending motion.

## III. DISCUSSION

### A.     Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a

4

motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted).  "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (emphasis and alterations in original)).  "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'"  *Id.* (quotations omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan*, 289 F. Supp. 2d at 295 (quoting

*Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has directed that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Id.* (citing *Showers v. Eastmond*, No. 00 CIV. 3725, 2001 WL 527484, *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## B.      Exhaustion

The Prison Litigation Reform Act ("PLRA") states that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90–103.

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross*, 136 S. Ct. at 1855. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'" *Id.* at 123–24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860).

When a plaintiff fails to fairly raise claims in his grievances, those claims are not exhausted. *See Beckles v. Bennett*, No. 05 Civ. 2000, 2008 WL 821827, *13 (S.D.N.Y. Mar. 2008) (citing *Porter*, 534 U.S. at 524–25 (an inmate must "afford [ ] corrections officials time and opportunity to address complaints internally before the initiation of a federal case")). In order to fairly raise his claims for exhaustion purposes:

> Plaintiff is not required to name all responsible parties in a grievance . . . . However, plaintiff must "provide 'a specific description of the problem,' that was sufficient to 'alert the prison to the nature of the wrong for which redress was sought,' and provide 'sufficient notice of wrongdoing to cause them to investigate any such claim.'"

*Hill v. Smith*, No. 9:16-CV-1225, 2018 WL 2172701, *5 (N.D.N.Y. Apr. 19, 2018), *adopted by* 2018 WL 2170291 (N.D.N.Y. May 10, 2018) (quoting *Albritton v. Morris*, No. 13-CV-3708, 2018 WL 1609526, *10–11 (S.D.N.Y. Mar. 29, 2018)) (other internal citations omitted).

In the present matter, the Court initially finds that the administrative remedies not pursued by Plaintiff were available to him. When an inmate enters the Chenango County Correctional Facility, he is provided with a copy of the Inmate Rule Book, which outlines a variety of procedures, including the "Inmate Complaint Procedures." *See* Dkt. No. 31-19 at ¶¶ 3–4; Dkt. No. 31-20 at 20–22. On July 29, 2018, Plaintiff filed an "Informal Inmate Complaint Form" that indicated he did not wish to attempt to resolve the complaint informally, and wished to file a formal grievance. *See* Dkt. No. 31-21 at 2. On the same date, Plaintiff filed a formal "Inmate Grievance Form" that described the following:

> Sir, I Have Paperwork that needs to Be Signed By an officer of this facility. I Have Been Denied By many officers with in [sic] the facility. Therefor [sic] I am Being Denied the Right to legal materials and Required Signature of an officer.

Dkt. No. 31-22 at 2. Plaintiff's grievance form was received by a staff member on July 30, 2018. *See id.* An investigation of Plaintiff's grievance was completed on August 9, 2018. *See id.* The decision of the Grievance Coordinator was to deny the grievance on the merits, indicating that "no officer or staff member has to voluntarily sign any of your paperwork. You are not being denied the right to legal materials. Officers or staff are not required to provide a signature on your personal legal work." *Id.* On the second page of the "Inmate Grievance Form," there is a clearly

marked section titled "Grievant's Appeal to the Chief Administrative Officer" with two options to select. *Id.* at 3. Plaintiff selected the option indicting "I agree to accept the decision." *Id.* He did not select the option indicating "I am appealing to the Chief Administrative Officer." *Id.* Plaintiff signed and dated this decision on August 9, 2018. *See id.* Plaintiff, therefore, knew of the availability to appeal the denial of his grievance to the Chief Administrative Officer as set forth in the Inmate Complaint Procedures, but chose not to take this action. *See* Dkt. No 31-24 at 21 ("Fifth Step: If you are not satisfied with the Investigating Grievance Officer's determination, you may file an appeal to the Jail Administrator or designee of this facility within two business days"). Plaintiff has not provided any reason why he did not appeal this decision.

Second, Defendants preserved the exhaustion defense by pleading it in their answer. *See* Dkt. No. 15 at ¶ 13. Plaintiff alleges generally in his complaint that Defendants have instructed officers to not sign paperwork for Plaintiff and that officers are placing Plaintiff in a cell for no reason. *See* Dkt. No. 1 at 2. The Second Circuit has recognized "that defendants' actions may estop them from raising non-exhaustion as a defense." *Ruggiero v. Cnty. of Orange*, 267 F.3d 170, 178 (2d Cir. 2006). Here, however, there is no evidence that Defendants' behavior estops them from asserting the exhaustion defense. *See Ziemba v. Wezner*, 366 F.3d 161, 162–64 (2d Cir. 2004) (directing the district court to consider whether the defendants were estopped from raising the exhaustion defense where the plaintiff alleged that he was beaten, threatened, denied grievance forms, and transferred to another prison in order to prevent him from seeking administrative remedies). Additionally, as stated above, Plaintiff clearly was not prevented from exhausting his administrative remedies against Defendants as he did, in fact, file both an informal and a formal grievance against them. *See* Dkt. No. 31-21; Dkt. No. 31-22.

Third, Plaintiff failed to fairly raise claims in his grievances, and therefore his claims are not exhausted. Plaintiff's informal and formal grievance make no mention of either Defendant by name. *See* Dkt. No. 31-21; Dkt. No. 31-22. Plaintiff only references "an officer" or "officers" refusing to sign documents. *Id.* Plaintiff's grievances do not–even read generously–charge any misconduct by either Defendant specifically. *See id.* Furthermore, although Plaintiff now alleges that he has been "cell confined" by Defendant White "in the past," and that both Defendants threatened to do the same on July 30, 2018, *see* Dkt. No. 1 at 2, "nothing in Plaintiff's grievance forms would have alerted the authorities that plaintiff was making such an allegation, nor would an official investigating plaintiff's grievance reasonably be expected to have explored such matters." *Turner v. Goord*, 376 F. Supp. 2d 321, 325 (W.D.N.Y. 2005) (collecting cases).[2] Plaintiff's formal grievance only stated that he was denied the right to a legal signature by many officers. Dkt. No. 31-22 at 2.

Additionally, Plaintiff filed an informal grievance on July 29, 2018. *See* Dkt. No. 31-21. He then filed a formal grievance on the same date. *See* Dkt. No. 31-22 at 1. On August 9, 2018, a Grievance Coordinator issued a determination on Plaintiff's grievance. *See id.* at 2. Plaintiff's complaint in this matter is dated July 31, 2018, and was received by the Court on August 3, 2018. *See* Dkt. No. 1. Accordingly, Plaintiff failed to fully exhaust his administrative remedies prior to commencing this action.

---

[2] Defendants argue that because Plaintiff's grievances are dated July 29, 2018, and that the complaint alleges the underlying incident occurred on July 30, 2018, that this did not place Defendants on notice for the purposes of the exhaustion requirement. There is, however, a notation on Plaintiff's "Informal Inmate Complaint Form" that indicates the form was given to Plaintiff on July 30, 2018 at 6:20 pm "for 'officers won't sign his papers.'" *See* Dkt. No. 31-21 at 2. This distinction does not change the Court's analysis for the purposes of the exhaustion requirement.

Because the administrative remedies were available to Plaintiff, Defendants properly preserved the defense and are not estopped from asserting it, and Plaintiff failed to "fairly present" claims in his grievances. Accordingly, the Court grants Defendants' motion for summary judgment because of Plaintiff's failure to exhaust his administrative remedies.

## C.    Relief Under 42 U.S.C. § 1983

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y. 1991) (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See Brown*, 758 F. Supp. at 881 (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 416–17 (1979); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

## D.    Retaliation

Although the Court has found that Defendants motion for summary judgment should be granted, the Court will nevertheless address the merits of Plaintiff's First Amendment retaliation claim. "Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)

(quotation and other citation omitted). "To prove a First Amendment retaliation claim under Section 1983, a prisoner must show . . . '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted). In making this determination, courts are to "bear in mind" that "prisoners may be required to tolerate more than average citizens, before a retaliatory action taken against them is considered adverse." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (internal quotation marks and citations omitted). The "test is objective, not subjective, and must be so, since the very commencement of a lawsuit would otherwise be dispositive on the issue of chilling." *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 447 (S.D.N.Y. 2006) (citations omitted).

In determining whether a causal connection exists between a plaintiff's protected activity and a prison official's actions, factors to be considered include: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." *Cole v. New York State Dep't of Corr. Servs.*, No. 9:10-CV-1098, 2012 WL 4491825, *11 (N.D.N.Y. Aug. 31, 2012) (citing *Colon*, 58 F.3d at 872–73).

Upon satisfying his initial burden, "the burden shifts to defendants to establish that the same adverse action would have been taken even in the absence of the plaintiff's protected conduct, *i.e.*, 'even if they had not been improperly motivated.'" *Davidson v. Desai*, 817 F. Supp. 2d 166, 194 (W.D.N.Y. 2011) (quoting *Graham*, 89 F.3d at 80). "At the summary judgment stage, if the undisputed facts demonstrate that the challenged action clearly would have been taken on a valid basis alone, defendants should prevail." *Davidson v. Chestnut*, 193 F.3d 144, 149 (2d Cir. 1999); *see also Murray v. Hulihan*, 436 Fed. Appx. 22, 23 (2d Cir. 2011) ("Defendants cannot be liable for First Amendment retaliation if they would have taken the adverse action even in the absence of the protected conduct").

Plaintiff claims that, as a result of his filing lawsuits concerning his conditions of confinement at the Chenango County Correctional Facility, Defendants retaliated against him by denying his requests for signatures on legal documents, threatened to discipline Plaintiff for requesting these signatures, and Defendant White did indeed discipline Plaintiff at some point for filing lawsuits generally. *See* Dkt. No. 1 at 2.

In the present matter, the undisputed facts do not support an allegation of First Amendment retaliation with regards to Plaintiff's requests for Defendants' signatures. On July 30, 2018, Defendants White and Gregwire were approached by Plaintiff, who requested their signatures on legal documents. *See* Dkt. No. 31-2 at ¶ 2. The legal documents required the signature of an "authorized officer" who could verify the contents of Plaintiff's commissary account. *See id.* Neither Defendant is a Commissary Officer, the appropriate "authorized officer" for this legal document. *See id.* at ¶ 3. Defendants were not presented with a court order or any other documents requiring the services of a notary. *See* Dkt. No. 31-2 at ¶ 2. Defendant White explained both Defendants' inability to sign Plaintiff's documents, after which Plaintiff "became

belligerent and argumentative" because neither Defendant had the authority to comply with his request as they did not have access to his commissary account or the balance thereof. *See* Dkt. No. 31-2 at ¶ 4; Dkt. No. 31-25 at ¶ 8. In his deposition, Plaintiff stated Defendants "wouldn't sign [the paperwork] because they didn't have a court order." *See* Dkt. No. 31-4 at 8:6–11.

There are a proscribed set of ways by which an inmate can obtain information about their commissary account. *See* Dkt. No. 31-2 at ¶ 5 ("Only a Commissary Officer is authorized to provide inmates with the information in an inmate's commissary account"); Dkt. No. 31-23 at ¶¶ 5–6 ("Information is obtained through receipts, order forms, kiosk, and the banker program. IFP applications are a regular part of the business, if an inmate needs to know amount in commissary account for fed or state court, they can access amount by kiosk or by a foil request"). The Inmate Rule Book outlines that the first interaction with a staff officer regarding a commissary account is typically, in fact, a Commissary Officer. *See* Dkt. No. 31-24 at 38–40.

Simply put, an officer refusing to perform a task for an inmate that the officer is not authorized to perform is not an adverse action for purposes of a First Amendment retaliation claim.

Additionally, the undisputed facts do not support an allegation of First Amendment retaliation with regards to Plaintiff being threatened by Defendants because he requested their signatures. There is no indication in the record that Plaintiff was threatened by Defendants after the alleged incident on July 30, 2018. "Courts have found that, while verbal threats may qualify as adverse actions, they must be 'sufficiently specific and direct' to be actionable." *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, *11 (S.D.N.Y. Sept. 28, 2018); *see also Quezada v. Roy*, No. 14 Civ. 4056, 2015 WL 5970355, *21 (S.D.N.Y. Oct. 13, 2015) ("The less direct and specific a threat, the less likely it will deter an inmate from exercise his First Amendment rights")

(quoting *Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010)).  The Court finds that the record is devoid of sufficiently direct or specific statements to support a retaliation claim based on the alleged verbal threats.

Furthermore, the record does not support that Plaintiff was disciplined as a result of filing various legal proceedings against staff at the Chenango County Correctional Facility.  The procedures for determining disciplinary actions for a violation of the Inmate Rules of Conduct are contained in the Inmate Rule Book.  *See* Dkt. No. 31-20 at 17–19.  Between the dates of June 19 and July 12, 2018, Plaintiff was charged with various counts of misbehavior and violations at the Chenango County Correctional Facility.  *See* Dkt. No. 31-2 at ¶ 13.  On June 20, 2018, Plaintiff was charged with "failure to obey any lawful order given to you by any officer or staff member immediately" because Plaintiff was ordered to "lock in due to referencing to another inmate as 'pedo' and 'slant eye.'  Inmate Demuth had to be ordered multiple times to stop making these comments and lock in before he complied."  Dkt. No. 31-8 at 2.  Plaintiff also violated Rule A3 "'insolence (rudeness and disrespect to any employee or any other person' by referring to another inmate as 'pedo' and 'slant eye.'"  *Id.*  As a result of this conduct, Plaintiff was placed in administrative segregation pending a hearing for twenty-four hours.  *See id.*[3]  On June 23, 2018, Plaintiff was charged with "insolence (rudeness and disrespect) to any employee or any other person" because Plaintiff "did express his pleasure with CO Jagodzinski, saying, 'he can suck my dick!'"  Dkt. No. 31-9 at 2.[4]  Plaintiff was already in disciplinary lock-in at that time.  *See id.*  On

_____

[3] A proposed hearing was set for June 21, 2018 at 9:00 am.  *See* Dkt. No. 31-8 at 2. However, there is no paperwork that a hearing was actually conducted on the violation "due to either it was over looked [sic] or it was not completed."  *See* Dkt. No. 31-5 at ¶ 8.

[4] A proposed hearing was set for June 25, 2018 at 9:00 am.  *See* Dkt. No. 31-9 at 2. However, there is no paperwork that a hearing was actually conducted on the violation "due to

(continued...)

July 12, 2018, Plaintiff was charged with "insolence to any employee or any other person" because Plaintiff referred "to CPL Hand as a 'asshole' and CO Torre as a 'fatass.'" *See* Dkt. No. 31-10 at 2. As a result of this conduct, Plaintiff was already locked in and was placed in administrative segregation pending a hearing. *See id.* Again on July 12, 2018, Plaintiff was charged with "failure to obey any lawful order given to you by any officer or staff member immediately" because Plaintiff stated that "'asshole CPI Hand and fatass CO Toree locked me up.' Sir on 6/23 yourself as well as CO Toree on 7/11 told him not to talk about officers using that language." Dkt. No. 31-12 at 2. As a result of this conduct, Plaintiff was placed in administrative segregation pending a hearing for twenty-four hours. *See id.* On a separate occasion on July 12, 2018, Plaintiff was charged with "any homosexual or sexual act" because Plaintiff stated to CO DuMont "I'm going to go lock in now you fucking faggot, you can suck my dick." Dkt. No. 31-13 at 2. As a result of this conduct, Plaintiff was placed in administrative segregation pending a hearing. *See id.*

After his initial hearing on the July 12, 2018 conduct was delayed five business days to obtain counsel, Plaintiff pled guilty to the first charge, and was found guilty of the second two charges on August 7, 2018. *See* Dkt. No. 31-2 at ¶¶ 17, 19; Dkt. No. 31-5 at ¶¶ 12, 14; Dkt. No. 31-11; Dkt. No. 31-14; Dkt. No. 31-15. A sentence of three days lock in was imposed for the first charge, and a sentence of suspended five days lock in was imposed for the second charge, to run concurrent with the same sentence for the third charge. *See* Dkt. No. 31-2 at ¶¶ 17, 19; Dkt. No. 31-5 at ¶¶ 12, 14; Dkt. No. 31-11; Dkt. No. 31-14; Dkt. No. 31-15. Plaintiff appealed the August 7, 2018 hearing, and Lieutenant Christopher S. Miles found that the hearing was not completed in

---

[4](...continued)
either it was over looked [sic] or inmate did not receive a copy of the misbehavior report." *See* Dkt. No. 31-5 at ¶ 10.

the necessary time frame, thus rendering the sanctions null and void. *See* Dkt. No. 31-2 at ¶ 20; Dkt. No. 31-5 at ¶ 15; Dkt. No. 31-16; Dkt. No. 31-17; Dkt. No. 31-18. Plaintiff has failed to offer anything other than conclusory allegations and speculation that Defendants acted with any retaliatory animus. Additionally, Defendants have established that, because of Plaintiff's many violations of facility rules, they would have taken the same actions against him.

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's First Amendment retaliation claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 31) is **GRANTED** and Plaintiff's complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 3, 2020
     Albany, New York

Mae A. D'Agostino
U.S. District Judge